No. 19-5036-JGD

# AFFIDAVIT OF SPECIAL AGENT PATRICK BRIODY IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Patrick Briody, having been duly sworn, do hereby depose and state as follows:

1. I am employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), where I have worked since 2010. I am currently assigned to the Bridgewater, Massachusetts, ATF Field Office. During my law enforcement career, I have participated in investigations involving firearms and drug trafficking, firearms possession by prohibited persons, and use of firearms in furtherance of drug trafficking crimes, many of which have occurred in and around Boston, Massachusetts.

2. I am investigating Mohamed Abdulaziz ("ABDULAZIZ") for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

3. I submit this affidavit in support of an application for a warrant to search an iPhone that is in the possession of law enforcement investigators, as described in Attachment A (the "iPhone"). I have probable cause to believe that the equipment contains evidence, fruits, and instrumentalities of the crime listed above, as described in Attachment B.

4. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers, and my review of records described herein. This affidavit is not intended to set forth all of the information that I have learned during this investigation, but includes only the information necessary to establish probable cause for the requested warrant.

## Probable Cause

5. On January 3, 2019, a grand jury sitting in Boston indicted ABDULAZIZ for committing the crime of being a felon in possession, in violation of 18 U.S.C. § 922(g)(1), on September 2, 2018. *United States v. Abdulaziz*, Crim. No. 19-10009-LTS. The facts supporting

the indictment are as follows.

6. On September 2, 2018, Massachusetts State Police Trooper Nicholas Lorenco responded to a report of a vehicle driving erratically as it traveled south on Route 24 in the area of exit 18 in the city of Brockton. The vehicle was described as a dark colored Volvo XC90 bearing Massachusetts registration 6EJ729.

7. While positioned at exit 17 on Route 24 south, Trooper Lorenco observed a dark colored Volvo XC90 pass him in the right lane. Trooper Lorenco proceeded behind the Volvo. He saw the Volvo swerve several times into the middle lane and brake erratically.

8. Trooper Lorenco conducted a traffic stop of the Volvo on Route 24 south at mile marker 30.2 in West Bridgewater, Massachusetts. The Volvo bore Massachusetts registration 6EJ729.

9. Trooper Lorenco saw that the only person in the Volvo was the male driver, who had the iPhone in his lap. The driver was unable to produce a registration for the Volvo. He produced a Massachusetts driver's license, no. Sxxxx4954, showing the name of Mohamed Dahiir Abdulaziz, with a date of birth of xx/xx/1987.

10. Trooper Lorenco detected a strong odor of alcoholic beverage coming from the driver's breath. He saw that the driver had bloodshot, glassy eyes and was unsteady on his feet. The driver was overly polite and kept trying to pat Trooper Lorenco on the shoulder. His speech was slurred and he failed several field sobriety tests.

11. Trooper Lorenco arrested the driver for operating under the influence and secured the man in the rear of his cruiser. Trooper Lorenco asked the driver who the vehicle belonged to and whether he wanted any items retrieved from the vehicle. The driver said the car was a rental and he did not want anything retrieved from it.

12. Trooper Ross Weddleton, who had arrived on the scene, and Trooper Lorenco performed an inventory search of the Volvo before it was towed. As soon as Trooper Lorenco opened the driver's side door, he saw a revolver on the driver's side floor. The revolver was sitting upright, leaning against the hump beneath the driver's seat where the floor mat is normally located. The barrel of the revolver was pointed toward the passenger side. Trooper Lorenco discovered that the revolver was loaded with five rounds of ammunition. The iPhone was sitting next to the revolver and was plugged into a charger.

13. Trooper Lorenco unloaded the revolver and secured it in an evidence bag. The revolver was a Taurus .357 caliber, model 605SS2, bearing serial number PG83419. The five rounds of ammunition were Remington .38 caliber ammunition.

14. Based on my review of records, I have determined that the revolver was manufactured in Brazil. Therefore, the revolver traveled in interstate commerce.

15. Remington does not manufacture ammunition in Massachusetts. Therefore, I know that the ammunition traveled in interstate commerce.

16. A criminal history check shows that ABDULAZIZ, date of birth xx/xx/1987, has been convicted of several crimes punishable by imprisonment of more than one year. These include November 30, 2009 convictions in Cambridge, Massachusetts District Court for Assault with a Dangerous Weapon, Assault and Battery, and Assault and Battery with a Dangerous Weapon, Docket No. 0852CR002148, for which ABDULAZIZ received a 2½ year suspended sentence on each count, to run concurrently.

17. The Volvo was rented from Enterprise. Enterprise records show that the car was rented to Betsy Cardoso of Dorchester, Massachusetts, on July 2, 2018. ABDULAZIZ was not listed as an authorized driver.

**Investigators' Possession of the iPhone**

18.     Massachusetts State Police troopers seized the iPhone when ABDULAZIZ was arrested on September 2, 2018. The iPhone was promptly transferred to and secured in the evidence room at the State Police barracks located at 326 West Grove Street in Middleborough, Massachusetts. On January 10, 2019, I took custody of the iPhone and transported it to the evidence room at the ATF field office located at One Lakeshore Center in Bridgewater, Massachusetts, where it is today.

**Probable Cause to Believe that the iPhone
Contains Evidence, Fruits, and Instrumentalities**

19.     Based on the fact that the iPhone was on ABDULAZIZ's lap when Trooper Lorenco first spoke to him, and the fact that when the Volvo was searched the iPhone was plugged into a charger, I have probable cause to believe that ABDULAZIZ owned or at least had dominion and control over the iPhone.

20.     As discussed above, the iPhone is currently being stored by investigators at their facilities as described in Attachment A. From my training and experience and the training and experience of law enforcement personnel who routinely handle this type of equipment, I understand that the iPhone has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

21.     From my training, experience, and information provided to me by other agents, I am aware that individuals frequently use computer equipment to carry out, communicate about, and store records regarding their daily activities. These tasks are frequently accomplished through sending and receiving e-mail, instant messages, and other forms of phone or internet based messages; scheduling activities; keeping a calendar of activities; arranging travel;

purchasing items; searching for information including information regarding travel and activities; arranging for travel, accessing personal accounts including banking information; paying for items; and creating and storing images and videos of their movements and activities.

22. Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones (which are included in Attachment B's definition of "hardware") can now function essentially as small computers. IPhones are a type of smartphone. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

23. From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B in smartphones.

24. Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the internet. This is true because:

   a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

   b. Even after files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time.  In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Wholly apart from user-generated files, electronic storage media often contains

    electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

d. Similarly, files that have been viewed over the internet are sometimes automatically downloaded into a temporary internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed internet pages or if a user takes steps to delete them.

## Conclusion

25. Based on the information described above, I have probable cause to believe that, on or about September 2, 2018, MOHAMED ABDULAZIZ violated 18 U.S.C. § 922(g)(1).

26. Based on the information described above, I also have probable cause to believe that evidence, fruits, and instrumentalities of this crime, as described in Attachment B, are contained within the equipment described in Attachment A.

Sworn to under the pains and penalties of perjury.

_____
PATRICK BRIODY
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Jan 28, 2019**
Subscribed and sworn before me on January __, 2019

_____
JUDITH G. DEIN
United States Magistrate Judge

## ATTACHMENT A

### Description of Property to Be Searched

The property to be searched consists of the following:

- One black iPhone, model A1429, IMEI 990002788061156

The property is located in the evidence room at the ATF field office located at One Lakeshore Center, Bridgewater, Massachusetts.

## ATTACHMENT B

### Items to Be Seized

1. For the period July 2, 2018 – September 2, 2018, all records, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities of 18 U.S.C. § 922(g)(1), including those related to:

    A. Buying, selling, trading, obtaining, or using firearms, magazines, and/or ammunition;

    B. The relationship, if any, between MOHAMED ABDULAZIZ and Betsy Cardoso;

    C. MOHAMED ABDULAZIZ's possessory interest in the Volvo XC90 from which the iPhone was seized, including, for example, whether he stole the vehicle or whether someone gave him permission to borrow it;

    D. Evidence of who used, owned, or controlled the iPhone; and

    E. Passwords, encryption keys, and other access devices that may be necessary to access the iPhone.

2. Serial numbers and any electronic identifiers that serve to identify the iPhone.

### Return of the iPhone

If, after inspecting the iPhone, the government determines that the iPhone does not contain contraband or the passwords, account information, or personally identifying information of victims, and the original is no longer necessary to preserve as evidence, fruits, or instrumentalities of a crime, the iPhone will be returned within a reasonable time, if the party seeking return will stipulate to a forensic copy's authenticity and accuracy (but not necessarily relevance or admissibility) for evidentiary purposes.

If the iPhone cannot be returned, agents will make available to the iPhone's owner, within a reasonable time period after the execution of the warrant, copies of files that do not contain or constitute contraband; passwords, account information, personally identifying information of victims; or the fruits or instrumentalities of crime.